UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PENINSULA SCHOOL DISTRICT,<br><br>                Plaintiff,<br><br>   v.<br><br>K.P. and M.P. on behalf of their minor child, A.P.,<br><br>                Defendants. | CASE NO. 3:23-cv-05743-DGE<br><br>ORDER ON DEFENDANTS' MOTION FOR STAY PUT (DKT. NO. 9) |

## I    INTRODUCTION

Before the Court is a motion for stay put by Defendants K.P. and M.P. ("Parents"), on behalf of their child, A.P. (Dkt. No. 9.) For the reasons set forth below, the Court GRANTS Parents' motion.

## II    BACKGROUND

The present case arises from a special education due process hearing in which an Administrative Law Judge ("ALJ") held the Peninsula School District deprived A.P. of a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA") by, *inter alia*, "failing to provide [A.P.] with an evidence-based, multi-sensory, structured literacy program for students with dyslexia and implement it with fidelity." (Dkt. No. 1-2 at 55.)

ORDER ON DEFENDANTS' MOTION FOR STAY PUT (DKT. NO. 9) - 1

Included in the relief ordered by the ALJ was a directive that A.P.'s individualized education program ("IEP") for the 2023–24 school year "shall expressly require the District to implement, with fidelity, an evidence-based structured literacy program designed for students with dyslexia [] for the Student's [specifically designed instruction ('SDI')] in reading." (*Id.* at 59.) The ALJ stressed that the "program shall be delivered in the scope and sequence intended by its designers, including use of the program's assessments and progress monitoring tools." (*Id.*) As the ALJ explained, the manner of implementation is important because "'[t]he provision of multiple methodologies throughout the day without clear coordination and structure'" can lead to "'confusion for a student and be detrimental for a student with dyslexia.'" (*Id.* at 20.) The ALJ further required that A.P.'s IEP "specify a mechanism for regular communication" at least every two weeks "between [A.P.'s] general education teacher(s), special education teacher, and private tutor (if any) to ensure that, to the extent practicable, the [A.P.'s] literacy education is delivered consistently with the elements of structured literacy." (*Id.* at 59–60.)

An evidence-based structured literacy program designed for students with dyslexia was therefore a central component of the ALJ's order. One such program the parties agree meets this requirement is "Seeing Stars." (Dkt. Nos. 9 at 4; 14 at 3; 16 at 3.) Indeed, the ALJ found that in March of 2023, a few months prior to the issuance of the ALJ's order, A.P.'s teacher "began implementing the Seeing Stars curriculum" with A.P. (Dkt. No. 1-2 at 42.) The District represents that it continues to use Seeing Stars in providing reading instruction to A.P. (Dkt. No. 15 at 4–5.)

Following the ALJ's order, the District appealed to this Court. (Dkt. No. 1.) Briefing is set to occur in early 2024. (Dkt. No. 21.) Parents bring the instant motion for stay put to ask that

aspects of the ALJ's order related to the structured literacy program be implemented during the pendency of the District's appeal. (Dkt. No. 9.)

### III   LEGAL STANDARD

The IDEA's "stay put" provision requires that during the pendency of IDEA proceedings, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). "[T]hen-current educational placement" typically refers to the placement described in the child's last implemented IEP as of the date the parents commenced IDEA proceedings. *Johnson v. Special Educ. Hearing Off.*, 287 F.3d 1176, 1180 (9th Cir. 2002); *E.M. v. Poway Unified Sch. Dist.*, 2019 WL 2918186, at *2 (S.D. Cal. July 8, 2019). However, when an ALJ orders that the parents' preferred placement is the appropriate placement for a student, the ALJ-ordered placement serves as the student's "educational placement" under the stay put provision. *See, e.g., K.D. v. Department of Educ., Hawaii*, 665 F.3d 1110, 1118 (9th Cir. 2011); *Clovis Unified Sch. Dist. v. California Off. of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990); *K.K. v. Hart*, 2022 WL 2162016, at *4 (C.D. Cal. Apr. 20, 2022); *Department of Educ., Hawaii v. C.B.*, 2012 WL 1081073, at *4 (D. Haw. Mar. 29, 2012).

### IV   DISCUSSION

Parents' motion for stay put contends that, "[i]n direct violation of the ALJ's order, the District is refusing" to implement an "evidence-based, structured literacy program designed for students with dyslexia" to A.P., and to document the implementation of the program in A.P.'s IEP. (Dkt. No. 9 at 1–2.) Accordingly, Parents ask the Court to direct the District to comply with this aspect of the ALJ's order pending the District's appeal, contending the ALJ's order represents A.P.'s "educational placement" under the IDEA's stay put provision. (*Id.* at 10–11.)

The District opposes Parents' motion on two bases.  First, the District asserts the ALJ's order requiring implementation and documentation of a structured literacy program does not represent a change to A.P.'s "educational placement" under the stay put provision, and, therefore, the stay put provision does not apply.  (Dkt. No. 14 at 7.)  Second, the District argues that pursuant to an agreement with Parents, it is already implementing the portion of the ALJ's order Parents now seek to enforce, such that there is nothing additional for the District to do.  (*Id.* at 10.)  The Court addresses each argument in turn.

A. **A.P.'s "Educational Placement" Under Stay Put**

The District contends the stay put provision does not require implementation of the ALJ's order because, "[o]n the face of the law, stay put applies only to changes to a student's 'educational placement,' and not other types of changes to a student's program." (*Id.* at 7.)  The District effectively urges the Court to find that "educational placement" for purposes of stay put principally encompasses a student's physical setting or surroundings (*e.g.*, at-home vs. classroom instruction, or 1:1 vs. group instruction) and would not reach a structured literacy program.  (*Id.* at 7–9).  According to the District, a structed literacy program is not "the type of 'significant change'" necessary to meet the term "educational placement." (*Id*. at 9.)

The Court finds this position overly restrictive.  First, while a student's educational placement under stay put often encompasses the physical setting in which the instruction takes place, the definition of an educational placement is not so limited.  In fact, the Ninth Circuit has indicated that a change in "educational placement" under the stay put provision can occur when there is "a significant change in the student's program" or "model of education," even if "the student remains in the same setting." *N.D. v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1116–17 (9th Cir. 2010).  Second, as described in the ALJ's findings, the structured literacy program in

this case is a significant change in A.P.'s model of education.  This is because it is necessary "to access her education"; "must . . . address . . . language needs through explicit, direct instruction"; "must cover the five general parts of reading"; "must also be multisensory, meaning the instruction is interactive and relies on a student using multiple modes of learning"; must provide "repeated practice to learn skills and teachers use controlled, decodable text to enhance a student's skills"; and must be "implemented as it is intended to be implemented." (Dkt. No. 1-2 at 19–20.)  Accordingly, the Court concludes that the writing program ordered by the ALJ constitutes an "educational placement" under the stay put provision.

The District also suggests that an ALJ-ordered placement must represent a change from a student's prior educational placement in order for stay put to apply. (Dkt. No. 14 at 9.)  Because A.P. was already receiving instruction pursuant to Seeing Stars a few months prior to the ALJ's order, the District contends the ALJ's order requiring implementation of a structured literacy program did not actually "require any []change to the quantity, location, or nature of the District's services to A.P" and, therefore, stay put should not apply. (*Id.*)

Again, the Court disagrees.  As an initial matter, the Court doubts the District's position that an ALJ-ordered placement must change a student's placement in order for the ALJ's order to be enforceable under stay put, particularly given that a purpose of the stay put provision was maintenance of the status quo and stability during the pendency of IDEA proceedings.  *See Van Scoy v. San Luis Coastal Unified Sch. Dist.*, 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005); *Termine v. William S. Hart Union High Sch. Dist.*, 219 F. Supp. 2d 1049, 1059 (C.D. Cal. 2002).  Indeed, courts have routinely found an ALJ-ordered placement to constitute a student's placement for purposes of stay put when, as of the date of the ALJ's order, the student was already enrolled in the ALJ-ordered placement. *See, e.g.*, *Clovis*, 903 F.2d at 641; *Department of*

*Educ., Hawaii v. Ria L.*, 2012 WL 5383543, at *2–5 (D. Haw. Oct. 30, 2012); *Ashland Sch. Dist. v. V.M.*, 494 F. Supp. 2d 1180, 1181–82 (D. Ore. July 5, 2007).

But even assuming that an ALJ-ordered placement may only constitute a student's educational placement under stay put when it represents a change to the student's prior placement, the Court would find this requirement satisfied. Absent the ALJ's order, A.P.'s "then-current educational placement" under stay put would be the placement reflected in her IEP as of the date Parents filed their due process complaint. *See Johnson*, 287 F.3d at 1180; *E.M.*, 2019 WL 2918186, at *2. Parents filed their complaint December 9, 2022. (Dkt. No. 1-2 at 2.) At that time, A.P.'s IEP did not reflect the placement required by the ALJ's order. Most critically, the IEP did not call for the use of a structured literacy program—such as Seeing Stars—with fidelity. (*Id.* at 46–50.) Moreover, the ALJ's order does not indicate the District ever adopted a new IEP incorporating a structured literacy program with fidelity during the 2022-2023 school year. (*Id.* at 55.) Accordingly, the ALJ's order requiring implementation of a structured literacy program necessarily changed A.P.'s educational placement under stay put. That the school has used Seeing Stars to some degree in recent months is irrelevant to that determination.

B.  **The District's Compliance with the ALJ's Order**

The District next argues that "[a]fter entry of the ALJ's decision, Parents agreed" at a September 14, 2023 IEP meeting "to amend A.P.'s IEP to document the implementation of Seeing Stars for A.P.'s reading instruction" (Dkt. No. 14 at 11), such that the September IEP is now A.P.'s stay put placement (*id.* at 10). The District contends that because "the District has formally adopted and continues to implement" Seeing Stars, which is "the specific type of

reading program contemplated in the ALJ's decision," there is nothing more for the District to do. (*Id.* at 11–12.) The Court disagrees.

*First*, the September IEP does not adhere to the requirements of the ALJ's order. The closest the amendment gets to satisfying the ALJ's directives is a cursory statement that "Reading SDI will be 1:1 with staff trained in Seeing Stars." (Dkt. No. 15 at 24.) This is not enough. Most notably absent from the amendment is any requirement, as was ordered by the ALJ, that the District implement the Seeing Stars or other structured literacy program "with fidelity" and "in the scope and sequence intended by its designers." (Dkt. No. 1-2 at 59.) And read literally, the September IEP would allow staff to instruct A.P. using any program, so long as the staff members themselves were at some point "trained in Seeing Stars." (Dkt. No. 15 at 24.) Moreover, the District's own summary of the September IEP meeting states that it "considered and rejected" implementing the ALJ's order (*id.* at 27), further belying the District's assertion that it has "formally adopted and continues to implement the specific type of reading program contemplated in the ALJ's decision." (Dkt. No. 14 at 11.)

*Second*, the record does not reflect Parents' agreement with the September IEP. The IEP amendment itself states that signatures of participants—including Parents—"do not constitute agreement or disagreement" with the IEP. (Dkt. No. 15 at 9.) And the "Prior Written Notice" summarizing the September IEP meeting shows the District refused Parents' request that the ALJ's order be implemented, again indicating a lack of agreement. (*Id.* at 28.) Indeed, it would "make[] no sense for [Parents] to have consented" to the September IEP for purposes of stay put, as that amendment represents "a significant reduction in services" compared to the ALJ-ordered placement. *K.K.*, 2022 WL 2162016, at *5. The Court therefore does not find that the September IEP superseded the ALJ-ordered placement.

# V    CONCLUSION

In sum, the ALJ-ordered placement constitutes A.P.'s educational placement under the IDEA's stay put provision.  Accordingly, the Court finds and ORDERS that Parents' motion to stay put (Dkt. No. 9) is GRANTED.  The District SHALL schedule an IEP meeting within five (5) days of the issuance of this Order for purposes of amending A.P.'s IEP and implement with fidelity a structured literacy program in the manner ordered by the ALJ (Dkt. No. 1-2 at 59–60).

Dated this 29th day of December 2023.



David G. Estudillo
United States District Judge